IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT S. DIETRICH,

Petitioner,

v.

S.W. CZERNIAK,

Respondent.

Civil No. 01-498-TC

FINDINGS AND RECOMMENDATION

COFFIN, Magistrate Judge.

**BACKGROUND**

Petitioner was indicted by a grand jury on charges of Sodomy in the First Degree (two counts), Sexual Abuse in the First Degree, Using a Child in the Display of Sexually Explicit Conduct, Rape in the First Degree, Unlawful Sexual Penetration in the First Degree, and Endangering the Welfare of a Minor (two counts), stemming from allegations that he sexually abused

his stepdaughter from the time she was five until she turned ten and reported him. Although petitioner told his attorney at the outset of criminal proceedings that he wanted to plead guilty to all the charges, counsel advised him to wait and see if she could negotiate some of the charges away. Counsel felt that if the case were to go to trial, petitioner would be convicted on all charges. Petitioner ultimately wanted counsel to get the best deal possible, but continued to tell counsel that he did not want to go to trial. Eventually, petitioner's attorney secured a deal that required petitioner to plead guilty to four charges - two counts of first-degree sodomy, and one count each of first-degree rape and first-degree unlawful sexual penetration - in exchange for the dismissal of the other four. After accepting his guilty pleas, the court sentenced petitioner to a total incarceration term of 265 months.[1]

Petitioner appealed his sentence, but the Oregon Court of Appeals denied his appeal without opinion. State v. Dietrich, 135 Or. App. 698, 899 P.2d 764 (1995). Petitioner sought review by the Oregon Supreme Court, but review was denied. State v. Dietrich, 322 Or. 168, 903 P.2d 886 (1995). The appellate judgment became final on November 29, 1995.

Petitioner filed a petition for post-conviction relief, but the PCR court denied relief. He appealed the PCR court's decision, but the Oregon Court of Appeals granted summary affirmance. Petitioner did not immediately seek review by the Oregon Supreme Court, and in the absence of a petition for review, the appellate judgment became final on April 8, 1999.

On May 17, 2000, thirteen months after the appellate judgment became final, petitioner filed a motion with the Oregon Supreme Court seeking leave to file a late petition for review. The court

---

[1]The term reflects a sentence of 58 months on the first sodomy conviction, a consecutive 91-month sentence on the second sodomy conviction, a consecutive 116-month sentence on the rape conviction, and a concurrent 121-month sentence on the unlawful penetration conviction.

granted that petition, and petitioner filed a petition for review. That petition was denied on February 6, 2001.

On April 10, 2001, petitioner filed the petition for federal habeas corpus relief presently before the court, alleging ineffective assistance of counsel and trial court error, both related to his entering guilty pleas to four of the eight charges against him. Respondent sought dismissal of the petition on the grounds that it was not timely filed, and in the alternative argued that the state courts' decisions are due deference.

This court recommended that the amended petition (#20) be denied based on the statute of limitations. The District Court adopted such recommendation. Petitioner appealed and the Ninth Circuit Court of Appeals remanded for an evidentiary hearing regarding the limitations issue. Respondent waived his limitations defense prior to the evidentiary hearing which negated the need for the hearing on the limitations issue. The balance of the amended petition is presently before the court. Petitioner declined to exercise an opportunity for supplemental briefing.

In petitioners' memorandum in support of his amended petition, there is an alternative request for an evidentiary hearing on petitioner's constitutional claims (p. 24 of #57). Such request is denied in accordance with 28 U.S.C. § 2254(e)(2). See Williams v. Taylor, 529 U.S. 420, 437, 439 (2000); Bragg v. Galaza, 242 F.3d 1082, 1089 (9th Cir. 2001) amended 253 F.3d 1150 (9th Cir. 2001); see generally Objections to Petitioner's Alternative Request for an Evidentiary Hearing (#61).

This court will now address the amended petition on the merits.

**DISCUSSION**

As noted above, petitioner alleges ineffective assistance of trial counsel and trial court error. Petitioner contends that his trial attorney failed to provide him accurate advice about his potential

sentence upon entry of his plea. Petitioner asserts that had he been properly advised, he would have asserted his right to a trial on the charges against him. In this context, petitioner also contends that petitioner's trial counsel and the trial court failed to ensure that his pleas of guilty were knowing , intelligent and voluntary.

At the time petitioner entered his guilty plea, petitioner's counsel was not aware of a case allowing the sentencing court to use some of petitioner's convictions stemming from the plea agreement to enhance his sentencing on other convictions stemming from the same plea agreement. Trial counsel states that when she learned of this, she told petitioner of the increased sentencing exposure, but that he chose not to attempt to withdraw his plea at the change of plea hearing and go to trial.

As discussed in more detail below, the judge at petitioner's change-of-plea hearing specifically advised petitioner of the maximum possible sentence he could receive, and all the trial rights he waived, if he chose to plead guilty. Furthermore, the Post Conviction Releif (PCR) court considered evidence and petitioner's testimony on petitioner's assertion that he would not have entered a guilty plea if he had known of the potential sentencing consequences. The PCR court specifically found this assertion not credible. As such, the PCR court's ultimate decision to deny relief on petitioner's claims was neither "contrary to" nor an "unreasonable application of " clearly established law as determined by the United States Supreme Court and such decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, under 28 U.S.C. §2254, as modified by the AEDPA and its exceptions, relief on petitioner's claims should be denied.

## I. The state court's decision to deny relief on Petitioner's Ineffective Assistance of Counsel Claim is due deference under AEDPA, and should not be disturbed.

### A. Relevant law

#### 1. Applicable law on AEDPA deference

Petitioner filed his original petition for habeas corpus relief after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, AEDPA applies to the review of his petition.

The relevant portion of AEDPA amended 28 U.S.C. § 2254 by adding the following:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

State court determinations need not be deferred to in every case. See Williams v. Taylor, 529 U.S. 362, 389 (2000)("If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."). However,

> AEDPA plainly sought to ensure a level of deference to the determinations of state courts, provided those determinations did not conflict with federal law or apply federal law in an unreasonable way. Congress wished to curb delays, to prevent "retrials" on federal habeas, and to give effect to state convictions to the extent possible under law. When federal courts are able to fulfill these goals within the

> bounds of the law, AEDPA instructs them to do so.

Williams, 529 U.S. at 386 (citation omitted).

The Williams court also found different and independent meanings in the "contrary to" and "unreasonable application of" clauses of AEDPA. Under the "contrary to" clause, a federal court may only grant habeas relief if: (1) the state court applied a rule that contradicts the governing law set forth in Supreme Court caselaw; or (2) the case confronting the state court was materially indistinguishable from a Supreme Court decision yet the court nevertheless arrived at a result different from the Supreme Court precedent. Id. at 406. Under the "unreasonable application of" clause, a federal court may only grant habeas relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13.[2] The evaluation of reasonableness is tested against an objective standard. Id. at 409-10. The Court also noted that:

> [T]he most important point is that an unreasonable application is different from an incorrect application of federal law . . . In § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11 (emphasis in original).

**2. Applicable law on ineffective assistance of counsel claims**

Review of a claim of ineffective assistance of counsel involves a two part analysis.

---

[2]The Court has also noted that a state-court decision may be an unreasonable application of clearly established federal law if "the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." Remdass v. Angelone, 530 U.S. 156 (2000).

A petitioner alleging ineffective assistance of counsel first must show that counsel "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Reasonableness is judged as of the time of counsel's conduct, not in hindsight.[3] Id. at 689-90. The reasonableness of counsel's actions "may be determined or substantially influenced by defendant's own statements or actions." Id. at 691.

The second part of the analysis looks at the consequence of any error counsel is found to have made. The error must have been "so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable." Id.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. The petitioner must affirmatively prove the prejudice. Id. at 693. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome . . ., and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. However, a petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." Id. The petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.

Unless a petitioner shows both error and prejudice, "it cannot be said that a conviction . . .

---

[3] "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.

resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 686. Under AEDPA, the court reviews for objective unreasonableness the state court's conclusion as to whether counsel's performance was deficient or resulted in prejudice. Weaver v. Palmateer, No. 04-36009, slip op. 7871, 7884 n.9 (9th Cir. July 17, 2006) (citing Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004)).

Finally, if a petitioner pleads guilty to an offense, to prove prejudice, he must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

**B. Analysis in this case**

Petitioner asserts that his trial attorney failed to properly advise him as to the consequences of his guilty pleas.[4]

The state PCR court made a number of findings relevant to this claim:

2. Trial counsel advised petitioner, after he pleaded guilty and before sentencing, that the sentencing court could use some of his convictions in Case No. 10-94-02437 to enhance other convictions in the same case. *After advising petitioner of this fact, trial counsel asked petitioner if he wished to withdraw his plea. Petitioner stated that he did not.*

.....

3. *Petitioner's desire to accept responsibility for his actions led to his decision to plead guilty in the underlying criminal case.*

4. At the change of plea hearing, the trial court advised petitioner that the severity of his sentences could escalate during sentencing.

5. At the time of his sentencing, petitioner told the sentencing court that he knew he had done wrong and he knew he needed help. Petitioner did not tell the court he wished to withdraw his plea.

---

[4]Petitioner's arguments regarding alleged pressure from members of his church to plead guilty and the validity of his plea are discussed in the next section.

6. *Because Petitioner had the chance to withdraw his plea after learning of the fact some of his convictions resulting from the plea could be used to enhance the sentence on other convictions stemming from the plea, petitioner's claim in the proceeding that he would not have entered a guilty plea had he known of the potential sentencing consequence described above is not credible.*

....

8. *Petitioner was informed of the maximum penalty he could receive under the plea agreement..*

PCR Court Findings of Fact and Conclusions of Law (#50, Ex. 124) at 2-3(emphasis added).

Based on these factual findings, the PCR court then arrived at the following conclusions of law:

1. In the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution or the Constitution of the State of Oregon.

....

3. Petitioner was informed of the maximum penalties that could be imposed for his convictions and his *pleas were knowing and voluntary.*

4. *Petitioner did not establish he would not have pleaded guilty had counsel advised him, prior to entry of his guilty pleas, that the sentencing court could use some of his convictions stemming from the plea agreement to enhance his sentence on other convictions stemming from the same plea agreement. Accordingly, petitioner did not establish he was prejudiced by the fact trial counsel did not advise him of this potential consequence and is not entitled to post-conviction relief..*

PCR Court Findings of Fact and Conclusions of Law (#50, Exh. 124) at 3-4 (emphasis added).

These findings and conclusions are well supported by the evidence proffered to the PCR court. In particular, petitioner's trial counsel, Anne Witte, testified as follows during the deposition taken by petitioner's PCR counsel for the petitioner's PCR trial:

Witte: I had a sense that the DA was smug, that he had something he was going to do, that there was some way that he was going to get the Judge to do a more harsh sentence and as soon as I saw that case and realized what it was that he was doing, I talked to Mr. Dietrich about it, and told him that was what they were going to try to do and if they were able to augment his criminal history each time that he was looking at significantly more time and ah and I told him the only option we had was to change our mind and ask to withdraw the plea-

Holstedt: Ok-

Witte: That we could do that, and that it wasn't guaranteed that he would allow it, but that we could do that, that they would umm, we would have to go to trial.

Holstedt: Alright, then what did Mr. what did Mr. Dietrich tell you how, when you explained to him?

Witte: Well, he eventually ah said he wanted to get it over with and wanted to do the plea, he did not want to withdraw the plea and he thought that he would, I you know, would I tell the Judge this and would I tell the Judge that.

....

Holdstedt: So you talked to him about withdrawing the guilty plea so that you could try to do something other than Miller- Buchholz?

Witte: Yes-

Holstedt: Miller-Bucholz and ah he choose not to withdraw the guilty plea, is that what you are telling me?

Witte: Yes.

Petitioner's PCR Exh. of Trial Attorney's Deposition(#50, Exh. 113) at 10-11.

Later in the same deposition, Witte gave the following answers:

Holstedt: Oh, ah, if you had known what the District Attorney was going to get or what the sentence was going to be, or what the District Attorney was going to ask for, would how differently would you have worked with Mr. Dietrich in his case?

Witte: I-I wouldn't I there I wouldn't have done anything differently that I could do. Mr. Dietrich wanted to plead guilty. Mr. Dietrich wanted to go in and plead to everything. And I said you can't, I can't let you do that, we'll just have to wait a little while-

....

Holstedt: Did you ah, so you advised him not to plead to the indictment straight up?

Witte: Right.

Holstedt: Umm, umm, instead advised him to wait so you could get some of the charges dismissed?

Witte: U huh.

Id. at 14-15.

In addition, trial counsel's affidavit specifically rebuts petitioner's assertion that he would have chosen to go to trial but for counsel's advice regarding sentencing:

3. My recollection is that petitioner wanted to plead guilty at the arraignment. Every time I saw him I had to explain over and over that he had to let me try to make a deal and that eventually he could plead guilty.

....

6. I told petitioner what I saw coming, that this district attorney might get what he wanted [defendant's convictions for separate and related acts may be counted as criminal history in sentencing] because the crimes were so bad. We discussed withdrawing his plea, but I told him the only alternative was trial, and he could get convicted of everything and really get nailed.

7. Petitioner wanted me to get a better deal, but I told him I couldn't. He did not want to go to trial. He did not want to move to withdraw his plea...

Petitioner's PCR Exh. of Trial counsel Affidavit (#50, Exh.120) at 2-3.

Moreover, after considering the evidence and hearing petitioner testify, the PCR court found that the petitioner's claim that he would not have entered a guilty plea had he known of the potential sentencing consequences was not credible. PCR Findings of Fact and Conclusions of Law (#50, Exh.124) at 3. In light of the evidence, there is little doubt that petitioner would have pled guilty regardless of trial counsel's sentencing advice. Petitioner argues that the PCR court placed undue

weight on petitioner's desire to accept responsibility and that accepting responsibility does not relieve counsel of the requirement to provide accurate information concerning the potential sentence and that had he received accurate information he would have gone to trial. Such is not persuasive in light of the above. Moreover, even assuming trial counsel did not modify her initial sentencing advice, and advised petitioner of additional exposure, petitioner has not shown there is a reasonable probability that, but for trial counsel's alleged error, he would not have pleaded guilty and would have insisted on going to trial.[5] Petitioner does not show that he suffered any prejudice flowing from counsel's sentencing advice. Hill , 474 U.S. 59.

The PCR court's ultimate decision to deny relief on petitioner's ineffective assistance of counsel claim was neither "contrary to" nor an "unreasonable application of " clearly established law as determined by the United States Supreme Court and such decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**II. The state court's decision to deny relief on petitioner's Due Process validity of plea claims is due deference under AEDPA, and should not be disturbed.**

Petitioner asserts that based on his arguments in the ineffective assistance of counsel claim, the state court decision regarding the validity of his plea was both contrary to and an unreasonable application of clearly established law. He alleges that his due process rights were violated because the trial court failed to ensure that his guilty pleas were knowing , intelligent and voluntary. Relief on this claim should be denied because the plea colloquy establishes that petitioner was properly

[5]In addition, although not required for my recommendation today, it should be stated that petitioner has not noted any credible defense he might have attempted to assert at trial.

advised of the maximum possible sentence he faced, and all the trial rights he waived, by pleading guilty.

The clearly established federal law that governs the validity of guilty pleas was articulated in Brady v. United States, 397 U.S. 742 (1970). In Brady, The Supreme Court concluded that a valid guilty plea must be knowing and voluntary. Id. at 748. In determining whether a guilty plea was entered into voluntarily, courts must consider all the relevant circumstances surrounding the guilty plea. Id. at 749. There is, however, "no fixed colloquy, no set of sequence or number of questions and answers, no minimum length of hearing, no Talismanic language that the judge is required to use." Stewart v. Peters, 958 F.2d 1379, 1384 (7th Cir. 1992). Rather, in Mabry v. Johnson, 467 U.S. 504 (1984), the court reiterated that:

> A plea of guilty by one fully aware of the direct consequences including the actual value of any commitment made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation(including unfulfilled or unfulfillable promises), or perhaps that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

Id. at 509. Thus, a plea is valid if it represents a voluntary and intelligent choice among alternative courses of action open to defendant. Hill v.Lockahrt, 474 U.S. 73,74 (1977). Accordingly, representations made by a defendant as well as any findings made by the judge to accept the plea, "constitute a formidable barrier .... Solemn declarations in open court carry a strong presumption of validity." Id.

The Supreme Court addressed the validity of guilty pleas in Untied States v. Ruiz, 536 U.S. 622 (2002):

> [T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant may labor. Brady, 397 U.S. at 757 (defendant 'misapprehended the quality of the State's case'); ibid. (defendant misapprehended the 'the likely penalties'); ibid. (defendant failed 'to anticipate a change in the law regarding relevant punishments'); McMann v. Richardson, 397 U.S. 759, 770 (1970) (counsel 'misjudged the admissibility' of a 'confession'); United States v. Broce, 488 U.S. 563, 573(1989) (counsel failed to point out a potential defense); Tollett v. Henderson, 411 U.S. 258, 267(1973)(counsel failed to find a potential constitutional infirmity in grand jury proceedings).

Ruiz, 536 U.S. at 630-631.

Before a court may accept a defendant's guilty plea, the defendant must be advised of the "range of allowable punishment" that will result from his plea. Torrey v. Estelle, 842 F.2d 234 (9th Cir. 1988).

The PCR Court made a number of factual findings relevant to this claim:

1. Petitioner's convictions stem from negotiated pleas of guilty.

....

4. At the change of plea hearing, the trial court advised petitioner that the severity of his sentence could escalate during sentencing.

....

8. Petitioner was informed of the maximum penalty he could receive under the plea agreement.

PCR Findings of Fact and Conclusions of Law (#50, Petitioner's Exh.124) at 3.

Based on these factual findings, the PCR court then made the following conclusion of law:

3. Petitioner was informed of the maximum penalties that could be imposed for his convictions *and*

*his pleas were knowing and voluntary.*

PCR Court Findings of Fact and Conclusions of Law(#50, Exh. 124) at 4 (emphasis added).

Before accepting petitioner's pleas, the trial judge specifically inquired into petitioner's understanding of the rights waived, and the sentencing exposure he faced, as follows:

Trial Court: Mr. Dietrich, your are charged in Counts 1 and 2 of the indictment with Sodomy in the First Degree, and those are class A felonies, as is count 5, the Rape in the First Degree charge. By statute, *those carry a maximum penalty of 20 years* and a one hundred thousand dollar fine.
....
Let's put it this way. The *minimum presumptive sentence on one of these charges is 58 months. It could escalate up from there to maybe you are looking at 100. I suppose 115 would be the maximum that you are looking at on a charge.*
Do you understand that?

Petitioner: Yes, your honor.
....
Court: Count 6 is Unlawful Sexual Penetration in the First Degree, also an A felony and the same statutory maximums
This is also a 10 in that same ballpark. Do you understand?
Petitioner: Yes, sir.
Court: And you are prepared to plead guilty to all four charges based upon the negotiations?
Petitioner: Yes, sir, Your Honor.
Court: Did you hear what I went through with the gentleman in front of you about the rights that you give up when you do that?
Petitioner: Yes, sir.
Court: Do you have any questions about that?
Petitioner: No.
Court: Would you like me to repeat those for you?
Petitioner: No.
Court: Did you also hear what I said about possible deportation and refusal of naturalization on reentry into this country if you are not a U.S. citizen?
Petitioner: Yes, sir.
Court: Anyone made any promises of any kind in exchange for your agreement to plead guilty to these four charges, except for what I've been told in court today?
Petitioner: No, Your Honor.
Court: Anyone threaten you in any way?
Petitioner: No, Your Honor.
Court: Or in any way forcing you to do this today?

Petitioner: No, Your Honor.[6]
Court: And have you had a chance to discuss this all with your counsel as much as you wish to?
Petitioner: Yes, Your Honor.
Court: And do you wish to enter guilty pleas to those charges as indicated?
Petitioner: Yes.

Transcript of Change of Plea Hearing(#50, Exh. 103) at p. 4-7.

Based on this plea colloquy, and the PCR court's other factual findings, the PCR court's ultimate decision to deny relief on petitioner's due process claims was neither "contrary to" nor an "unreasonable application of" clearly established law as determined by the United States Supreme Court and such decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**CONCLUSION**

For the above stated reasons, the amended petition for a writ of habeas corpus (#20) should be denied and the court should enter a judgment dismissing the action.

DATED this 10 day of September, 2007.

Thomas M. Coffin

United States Magistrate Judge

---

[6]Petitioner has generally argued that there is evidence that petitioner's decision to stick by his guilty plea was not voluntary because of pressure put on him by members of his church. However, the above indicates that petitioner represented and declared in open court that no one threatened him or forced him to plead guilty. The findings in state court on petitioner's claims are due deference and should not be disturbed.